**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Dennis Marlowe, et ux.,                          )
                                                 )
              Plaintiffs,                         )       No. CV-06-1347-PHX-PGR
       vs.                                        )
                                                 )
Pinal County, et al.,                            )       CORRECTED OPINION AND
                                                 )       ORDER
              Defendants.                         )
                                                 )

       Pending before the Court is the defendants' Motion for Summary Judgment
(doc. #50), wherein defendants Pinal County and Corporal Hunter Rankin of the
Pinal County Sheriff's Department seek to have all of the federal constitutional
and state law tort claims brought against them by plaintiffs Dennis and Alyce
Marlowe in this removed action dismissed pursuant to Fed.R.Civ.P. 56.  Having
considered the parties' memoranda in light of the evidence of record, the Court
finds that the defendants' motion should be granted in part and denied in part.[1]

Factual Background

       This action arises from Corporal Rankin's detention of Dennis Marlowe on
the night of April 25, 2005.  The relevant evidence of record, viewed in the light

---

[1]       While the defendants have requested oral argument, the Court
concludes that oral argument would not aid the decisional process.

most favorable to the plaintiffs where disputed, includes the following.  Corporal Rankin was dispatched to the Schwartz residence at 65490 E. Rolling Hills Drive in the SaddleBrook community pursuant to an emergency call about a family fight in progress.  Corporal Rankin arrived at what he thought was the correct location of the emergency call at 23:09:07 - however, due to confusion on his part about what street he was on, Corporal Rankin actually went to 65490 E. Canyon Drive, the residence of the plaintiffs; the Schwartz residence, where Corporal Rankin was supposed to be, was located approximately at the intersection of E. Rolling Hills Drive and E. Canyon Drive, eleven houses away from the plaintiffs' residence.  In seeking to find the Schwartz residence, Corporal Rankin entered the correct neighborhood on S. Rolling Hills Drive, then he turned around because the house numbers were going in the wrong direction in that they were getting smaller rather than larger.  He then continued driving on what he thought was Rolling Hills Drive until he reached the correct house number; he did not realize that Rolling Hills Drive had become E. Canyon Dr. shortly after he turned around.  Corporal Rankin had a department-issued street atlas in his patrol car at that time.

The initial dispatch call to Corporal Rankin stated that the suspect, Paul Schwartz, was the 911 caller's 73 year old husband, that the caller had locked herself in a bedroom, that the suspect was extremely intoxicated after having drunk a few bottles of hard liquor, that he was being very belligerent and that he would be very angry that the sheriff's office had been called.  At the time, Mr. Marlowe was 68 years old, weighed about 210, was five feet eleven, and balding with some white or gray hair, and he had had one glass of wine with his dinner several hours earlier.

At the time Corporal Rankin arrived at the plaintiffs' residence, the house was dark and quiet as the plaintiffs were in bed sleeping.  After getting no response after ringing the door bell and knocking on the front security door, Corporal Rankin went through an unlocked gate to the back of the house and knocked on the sliding glass door of the plaintiffs' bedroom; the door was covered by closed vertical blinds.  In the meantime, having been awaken by his wife to check on the noise that Corporal Rankin made at the front door, Mr. Marlowe, then naked, went to look out of the front of the house.  Seeing nothing out front, he walked back into the bedroom where he saw a light from a flashlight in the backyard.  Being angry and frightened and confused, he screamed through the closed sliding glass door words to the effect of "what the hell are you doing in my back yard" and "get out of my yard."  Hearing a man yelling at him from inside the house, Corporal Rankin identified himself as a sheriff and told the man that he wanted to talk to him and for him to come outside.  Mr. Marlowe then told Corporal Rankin through the closed sliding glass door that if he wanted to talk, to go back to the front of the house so that they could talk through the security door. Corporal Rankin then ordered Mr. Marlowe to get outside immediately and told him that if he did not he was going to be in more trouble than he had ever been in his life.

Feeling intimated and frightened, Mr. Marlowe put on a pair of trousers and opened the sliding glass door of the bedroom.  He saw Corporal Rankin shining his flashlight on himself to show that he was a deputy sheriff.  Mr. Marlowe then put his hands through the closed blinds as directed by Corporal Rankin, and then went outside onto the back porch as ordered and placed his hands behind his back as ordered and was handcuffed; he was handcuffed approximately 10 to 15

seconds after he went outside.  He did not resist in any way being handcuffed, and complied with all of Corporal Rankin's orders given during the entirety of the incident. Corporal Rankin smelled liquor on Mr. Marlowe when he first came outside.

Immediately after handcuffing him, Corporal Rankin searched Mr. Marlowe's pants pockets and found an employee identification card that contained his name and photograph.  At no time did Corporal Rankin ask Mr. Marlowe his name or the name of his wife.  The only question Corporal Rankin asked Mr. Marlowe was whether he was at 65490 E. Rolling Hills Drive, to which Mr. Marlowe replied, "no, you fucking moron, it isn't, this is Canyon Drive, you are on the wrong street, you have got the wrong house and I don't know what you are doing here and why don't you just go away."  Corporal Rankin believed that Mr. Marlowe was slurring some words when he informed Corporal Rankin that he was at the wrong address. Corporal Rankin then told Mr. Marlowe that he was going to be put in the patrol car.  Corporal Rankin never told Mr. Marlowe at any time that he was responding to a 911 domestic violence call.  While Corporal Rankin told Mr. Marlowe that he wanted to check on his wife, he never asked Mr. Marlowe any questions about his wife.

Corporal Rankin then walked Mr. Marlowe some 70 to 80 yards to his patrol car that was parked down the street from the front of the plaintiffs' residence.  Mr. Marlowe was forced to walk bent over from his waist at a 90-degree angle because Corporal Rankin had his arm underneath the handcuffs and was leveraging Mr. Marlowe's arms up; he was also forced to walk in discomfort in his bare feet across 30 to 40 yards of gravel, which took 15 to 30 seconds, on the way to the patrol car.   When Mr. Marlowe asked Corporal

1  Rankin if he could walk on the stepping stones instead of the gravel, Corporal

2  Rankin told him to shut up and that he was running the show not Mr. Marlowe.

3  During this time period, Mr. Marlowe continued to be agitated, frightened and

4  upset and, in a loud voice, continued to refer to Corporal Rankin in various

5  derogatory terms, including "asshole," "dope," and "brainless idiot."

6  Corporal Rankin secured Mr. Marlowe in the back seat of his patrol car

7  where Mr. Marlowe remained handcuffed for some 30 minutes. Mr. Marlowe was

8  very uncomfortable while he was detained in the patrol car because he was

9  forced to lean forward in a cramped and crowded position.

10  Corporal Rankin then again checked the street number of the plaintiffs'

11  residence and, after seeing another sheriff's car pull up in front of a different

12  house at the end of the block, called his dispatcher because he was confused

13  about whether he was at the right house.  The dispatcher told Corporal Rankin

14  that the 911 caller was stating that no one had contacted her yet, that he was

15  supposed to be at the intersection of Canyon and Rolling Hills, and the dispatcher

16  confirmed that the 911 suspect was six-foot, 200 pounds or more, and that he

17  was bald on top with gray hair on the sides, which was a description that Corporal

18  Rankin continued to think matched Mr. Marlowe.

19  Corporal Rankin told the dispatcher to advise the 911 caller that he was at

20  the front of the house and to come meet him.  Corporal Rankin then rang the front

21  door bell but got no response.

22  At  23:22:35, which was about 13 minutes after Corporal Rankin arrived at

23  the Marlowe residence, the dispatcher informed Corporal Rankin that the 911

24  caller was advising dispatch that they had the wrong guy since her husband, the

25  actual suspect, was in her kitchen, and the dispatcher advised Rankin at 23:24:19

26

- 5 -

that the 911 caller was advising dispatch that the police were going the wrong way and to turn around since her house was east of Canyon.  At some unspecified time after Mr. Marlowe was placed in the back of the patrol car, Deputy Martin arrived at the plaintiffs' residence and he informed Corporal Rankin that he thought Corporal Rankin was at the wrong address.  At Corporal Rankin's direction, Deputy Martin located a street sign and returned to confirm to Corporal Rankin that they were at the wrong house.  While Deputy Martin looked for a street sign, Corporal Rankin returned to the back of the house and found that someone inside had locked the sliding glass door in the bedroom that Mr. Marlowe had exited and that Corporal Rankin had left open before he took Mr. Marlowe to the patrol car.  Corporal Rankin knocked on the glass door but got no response.

Corporal Rankin then sent Deputy Martin to tell Sergeant Gillen, who was at the Schwartz residence, to come to the Marlowe residence.   Upon his arrival, Sergeant Gillen released Mr. Marlowe from custody; Sergeant Gillen reported to the dispatcher at 23:48:23 that Mr. Marlowe had been released.  Corporal Rankin did not leave the location of the plaintiffs' residence until Sergeant Gillen arrived there.

Corporal Rankin, although knowing that the priority in a domestic violence call is the victim, acknowledged that he never entered the plaintiffs' residence to determine if there was an injured victim inside during the time Mr. Marlowe was being detained, and he did not make any contact with Mrs. Marlowe until after Sergeant Gillen arrived and she informed them at her front door that she was okay.

Throughout the duration of this incident, Mrs. Marlowe was confused and

very frightened.  After Mr. Marlowe was ordered outside, she crawled out of her bedroom and down the hall because she was afraid that whoever was outside could see her through the windows.  She then called her daughter in California and told her that someone was banging on the house and that Mr. Marlowe had gone outside and had not come back in and that she did not know what to do.  At her daughter's suggestion, she then crawled to the front of the house to peek out a window, at which time she saw a police car parked down the street, which confused her even more.  Still being very terrified because she did not know what was happening, she then waited in the dark at the front of the house for Mr. Marlowe to come back inside.  She did not turn on the front light and open the front door until sometime later when an officer rang the doorbell.  At the officer's request, she identified herself and produced her driver's license to establish her identify.  Mr. Marlowe came inside very shortly thereafter and also produced identification to the officer, who was Sergeant Gillen.  Mrs. Marlowe never saw anything that happened to her husband after he went outside.

Neither of the plaintiffs are claiming that they suffered any physical injury from the incident.  Mr. Marlowe suffered discomfort in having to walk barefoot across the gravel in a hunched over position and from having to sit handcuffed hunched over in the patrol car, but he did not suffer any injury from being handcuffed.  While Mr. Marlowe believes that he will never forget the incident because it was the worst situation of his life other than when his son died, he never believed during the incident that his life was in any danger.  He believes that the incident terrified his wife more than it did him.  The incident caused Mrs. Marlowe to suffer emotional distress but not any physical injury.  She talked about the incident with a co-worker who was a counselor, but she never formally

1  received any mental health treatment for her emotional distress because it was

2  very expensive.

3  <u>Federal Claims</u>

4  A. Dennis Marlowe's Claims Against Corporal Rankin

5       Although it is not entirely clear from the complaint, the parties agree that

6  Count Two of the complaint raises claims against Corporal Rankin pursuant to 42

7  U.S.C. § 1983 for wrongful seizure of Mr. Marlowe in violation of the Fourth and

8  Fourteenth Amendments, for excess force against Mr. Marlowe in violation of the

9  Fourth and Fourteenth Amendments, and for violation of Mr. Marlowe's due

10  process rights.[2]   The defendants seek summary judgment on the grounds that

11  Corporal Rankin did not violate any of Mr. Marlowe's constitutional rights, and

12  that even if he did so, he is entitled to qualified immunity.

13       The threshold inquiry in deciding a summary judgment motion based on

14  qualified immunity is whether the plaintiffs' factual allegations, taken as true,

15  establish a constitutional violation; if they do not, the inquiry ends.  If they do, the

16  next step is to determine whether the constitutional right that was violated was

17  clearly established, *i.e.,* whether it would be clear to a reasonable officer that his

18  conduct was unlawful in the situation he confronted.[3]   <u>Saucier v. Katz</u>, 533 U.S.

19  _____

[2]

20       Since the plaintiffs specifically concede in their response that they have
21  no due process claim against Corporal Rankin, the Court will not discuss that
     issue.
22

[3]

23       In determining whether the plaintiffs have met their burden of producing
     significant probative evidence creating a triable issue of fact on the issues on
24  which they have the burden of proof, the Court has relied on the evidence of
     record cited to in the parties' statements of facts.  *See* <u>Bias v. Moynihan</u>, 508
25  F.3d 1212, 1219 (9th Cir.2007) ("A district court does not have a duty to search for
     evidence that would create a factual dispute.")
26

1   194, 201, 121 S.Ct. 2151, 2156 (2001).

2       (1) Wrongful Detention

3       In their response to the summary judgment motion, the plaintiffs elaborate

4   on their § 1983 wrongful detention claim by arguing that Corporal Rankin's

5   seizure and confinement of Mr. Marlowe constituted an arrest without probable

6   cause.[4]  The propriety of Mr. Marlowe's detention is resolved under the objective

7   standard of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968), and its progeny,

8   since the Ninth Circuit has determined that a Terry stop can occur at a person's

9   residence. United States v. Crapser, 472 F.3d 1141, 1148 (9th Cir.2007) ("[W]e

10  now hold that when a suspect voluntarily opens the door of his residence in

11  response to a non-coercive 'knock and talk' request, the police may temporarily

12  seize the suspect outside the home (or at the threshold) provided that they have

13  reasonable suspicion of criminal activity.")

14      The defendants argue that they are entitled to summary judgment on the

15  detention issue because Corporal Rankin was fully justified in handcuffing Mr.

16  Marlowe and detaining him in the patrol car while Corporal Rankin investigated

17  what he thought was a domestic violence situation. Almost the entire focus of the

18  defendants' detention-related argument is directed at the propriety of Corporal

19  Rankin's initial detention of Mr. Marlowe; they essentially ignore the issue of

20  whether the entirety of Mr. Marlowe's detention was lawful.

21      Accepting the plaintiffs' version of the facts as true, the Court concludes

22  that the plaintiffs have created a triable issue of fact as to whether Corporal

23  _____

    [4]

24          The plaintiffs also mention in connection with their § 1983 claim that
    Corporal Rankin was negligent in arresting Marlowe.  However, that is a non-
25  issue because § 1983 liability cannot be based on negligence. See Daniels v.
    Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663 (1986).
26

Rankin had sufficient reasonable suspicion of criminal activity on Mr. Marlowe's part to support his decision to even initially detain Mr. Marlowe by forcibly removing him from his back porch.  Under Terry and its progeny, the Fourth Amendment allows a police officer to conduct a brief, investigatory seizure only so long as the officer has a reasonable, articulable suspicion that justifies his action. Gallegos v. City of Los Angeles, 308 F.3d 987, 990 (9th Cir.2002).

The evidence supporting the plaintiffs' contention that no detention was ever reasonable includes the following: that Corporal Rankin had been told by the dispatcher that the name of the suspect was Schwartz and that the suspect's house was on E. Rolling Hills Drive, that there was no overt indication of any disturbance at the plaintiffs' residence when Corporal Rankin arrived as the house was dark and quiet, that Corporal Rankin only heard some faint voices behind the closed sliding glass door of the plaintiffs' bedroom when he initially checked the back of the house, that the only commotion that he then heard was Mr. Marlowe yelling at him to get out of the backyard, that Mr. Marlowe requested that Corporal Rankin talk to him through the front security door, that Corporal Rankin could not have smelled any liquor on Mr. Marlowe when he first stepped out of the bedroom onto the back porch because Mr. Marlowe only had a single glass of wine several hours earlier and Corporal Rankin was five to ten feet away from him at the time he exited the bedroom, that Corporal Rankin never asked Mr. Marlowe his name before handcuffing him nor did he ask him whether he had been drinking, that Mr. Marlowe informed Corporal Rankin while they were still on the back porch that he was at the wrong address because the house was 65490 Canyon Drive, that Corporal Rankin found Mr. Marlowe's employment identification card, which had Mr. Marlowe's name and photograph on it, before

they left the back porch, and that Mr. Marlowe, while verbally abusive to Corporal Rankin, never physically resisted him and obeyed all of his commands.

However, even if Mr. Marlowe's detention was initially proper under Terry, the issue remains whether the length and intrusiveness of the detention were sufficiently excessive so as to violate Mr. Marlowe's constitutional rights as being a de facto arrest without probable cause.[5]  In general, the investigative methods used during a Terry stop must be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time, Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325-26 (1983); United States v. Ricardo D., 912 F.2d 337, 340 (9th Cir.1990), and an arrest may occur, requiring probable cause, if a Terry stop  proceeds beyond its limited purpose. United States v. Miles, 247 F.3d 1009, 1012 (9th Cir.2001).  While a Terry seizure cannot continue for an excessive period of time nor can it resemble a traditional arrest, Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County, 542 U.S. 177, 185-86, 124 S.Ct. 2451, 2458 (2004), there is no litmus paper test to determine when a proper investigatory detention pursuant to Terry has been transformed into an arrest requiring probable cause - the difference is one of degree and is dependent upon a fact specific inquiry that considers the "totality of the circumstances," which includes such factors as the intrusiveness of the stop, *i.e.*, the aggressiveness of Corporal Rankin's methods and how much Mr. Marlowe's liberty was restricted, and the justification for the use of such tactics, *i.e.,* whether the Corporal Rankin had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken.  Washington v. Lambert, 98 F.3d 1181, 1185

---

[5]

The defendants do not contend that Corporal Rankin had probable cause to arrest Mr. Marlowe.

(9th Cir.1996).   In this case, the significant probative evidence of record, viewed in its totality in the plaintiffs' favor, is sufficient to sustain a determination that Mr. Marlowe's constitutional rights were violated by Corporal Rankin because he was detained beyond the time necessary for Corporal Rankin to confirm that he was not the suspect in the 911 call.

The first determinative factor here is the length of time Mr. Marlowe was detained, which was at least 30 minutes.  It is well established that in determining when a detention is too long in duration to remain valid under Terry, it is necessary to determine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575 (1985); *accord*, Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dept., 533 F.3d 780, 2008 WL 2599683, at *12 (9th Cir. July 2, 2008) ("Once the sheriffs validly initiated an investigative stop, no rigid time constraints governed its duration, so long as the sheriffs acted diligently and pursued a means of investigation likely to confirm or dispel their suspicions quickly.")  The second determinative factor is the manner in which Mr. Marlowe was detained, which was handcuffed in the back of a patrol car.  While the mere fact that Mr. Marlowe was both handcuffed and placed in a patrol car does not necessarily mean that he was subjected to a de facto arrest, Haynie v. County of Los Angeles, 339 F.3d 1071, 1077 (9th Cir.2003) ("A brief, although complete, restriction of liberty, such as handcuffing, during a *Terry* stop is not a de facto arrest, if not excessive under the circumstances. ... Likewise, placing a person in a patrol car is not necessarily an arrest[,]") that type of an intrusive detention bears on the propriety of a lengthy Terry detention. United

States v. Torres-Sanchez, 83 F.3d 1123, 1127 (9th Cir.1996) (Court noted that detention in a patrol car exceeds permissible Terry limits absent some reasonable justification.)

The evidence supporting a determination that Corporal Rankin's investigatory detention of Mr. Marlowe at some point was transformed into an arrest without probable cause, in addition to that previously cited, includes the following: that after Corporal Rankin had placed Mr. Marlowe, hancuffed, in the patrol car, he was told by his dispatcher that the 911 caller was advising dispatch that they did not have her husband, the actual suspect, in custody, that Deputy Martin advised Rankin that he was at the wrong address, and that Mr. Marlowe was not released from custody until some 26 minutes after the dispatcher had advised Rankin that he did not have the actual 911 suspect in custody.

Since the evidence of record submitted by the plaintiffs is sufficient to support a determination that Corporal Rankin violated Mr. Marlowe's Fourth Amendment rights by expanding the scope of his detention beyond the circumstances may have initially justified it, the second step of the Saucier analysis is to determine whether the law relevant to the wrongful detention claim was clearly established as of the date of the incident, April 25, 2005.  Saucier v. Katz, at 201-203, 121 S.Ct. at 2156.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id., at 202, 121 S.Ct. at 2156.   Even if the right is clear, however, the Court must still determine whether Corporal Rankin made a reasonable mistake about the law's requirement. Id., at 205, 121 S.Ct. at 2158; Center for Bio-Ethical Reform, Inc., 2008 WL 2599683, at *11.

1     The Court concludes that Corporal Rankin is not entitled to qualified

immunity on the wrongful detention issue because a reasonable officer would

have known from the clearly established Supreme Court and Ninth Circuit case

law that it was unlawful to keep Mr. Marlowe handcuffed in the back of a patrol for

a significant period of time after it was reasonably obvious that he was not the

subject of the 911 call and was not a threat to the officer's safety.  *See* Center for

Bio-Ethical Reform, Inc., 2008 WL 2599683, at *14 (In affirming denial of qualified

immunity for an unreasonably lengthy Terry detention, the court noted that "[t]he

deputies' constitutional duty to act diligently and pursue a means of investigation

likely to confirm or dispel their suspicions quickly was clearly established on the

date of the detention in this case [*i.e.* March 23, 2003]");  Washington v. Lambert,

98 F.3d at 1192 (Court concluded that the law was clearly established in June of

1991 that officers, in making a Terry stop, could not use highly intrusive

measures such as handcuffing and placement in a patrol car for a significant

period of time if the circumstances did not reasonably justify such extraordinary

measures in order to ensure the officers' safety.)

     (2) Excessive Force

     The defendants also seek summary judgment on Mr. Marlowe's claim in

Count Two that Corporal Rankin used excessive force against him in violation of

his federal constitutional rights. The Court concludes for purposes of the first step

of the qualified immunity analysis that the plaintiffs' evidence, taken as true, is

sufficient to support a finding that the degree of force Corporal Rankin used on

Mr. Marlowe was not objectively reasonable given the totality of the

circumstances and therefore violative of his Fourth Amendment rights.

     The right to make an investigatory stop or an arrest of a free citizen

necessarily carries with it the right to use some degree of physical coercion to effect it. Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872 (1989). Whether the force used by an officer was excessive, thus constituting an unreasonable seizure violating the Fourth Amendment, is determined by the objective reasonableness of the force in light of the facts and circumstances confronting the officer, without regard to the officer's underlying intent or motivation. Id., at 396-97, 109 S.Ct. at 1872.  The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight, and the determination of whether the force used by an officer is reasonably proportionate to the need for that force is made by considering various factors, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, whether the suspect was actively resisting arrest or attempting to flee, Id., at 396, 109 S.Ct. at 1872, and the availability of less abusive methods of subduing a suspect or otherwise accomplishing the officer's objective. Davis v. City of Las Vegas, 478 F.3d 1048, 1056 (9th Cir.2007); Smith v. City of Hemet, 394 F.3d 689, 703 (9th Cir.), *cert. denied*, 545 U.S. 1128 (2005).

While the defendants argue that Corporal Rankin's decision to handcuff Mr. Marlowe was proper as a matter of law given the circumstances Corporal Rankin was on a domestic violence call and was confronted by an angry and agitated man who fairly matched the description of the 911 suspect, the Court concludes that a reasonable jury could conclude that the circumstances did not objectively warrant the immediate handcuffing of Mr. Marlowe.

This is so because the plaintiffs' evidence is that Mr. Marlowe, while verbally belligerent and disrespectful, was never physically threatening or

physically abusive to Corporal Rankin and did nothing that objectively gave Corporal Rankin any reason to believe that he was a flight risk or posed an immediate threat to anyone's safety. *See* Robinson v. Solano County, 278 F.3d 1007, 1015 (9th Cir. 2002)(en banc) ("In cases involving investigatory or Terry stops, we have consistently applied the principle that ... using handcuffs or other restraints is unreasonable in many situations."); Washington v. Lambert, 98 F.3d at 1187 ("Under ordinary circumstances, when the police have only reasonable suspicion to make an investigatory stop, ... using handcuffs and other restraints will violate the Fourth Amendment.").

But even if the initial handcuffing was objectively warranted, a reasonable jury could still conclude from the plaintiffs' evidence that Corporal Rankin violated Mr. Marlowe's constitutional rights because the quantum of force that Corporal Rankin used on him subsequent to the handcuffing, *i.e.*, forcing him to walk across a gravel yard in his bare feet while bent over in a hunched position with his arms forcibly raised and being forced to remain handcuffed in a patrol car for a lengthy period of time in an uncomfortable position, constituted greater force than that objectively compelled by the situation. The plaintiffs' evidence, taken as true, supports a finding that Corporal Rankin, prior to taking Mr. Marlowe to his patrol car, had no reason to view Mr. Marlowe as an immediate safety threat because Mr. Marlowe had been handcuffed and searched, he had given the address of his residence as being on a different street than that of the 911 caller, and he had provided an employment photo identification card that identified him as someone other than the 911 suspect. *See* Smith v. City of Hemet, 394 F.3d at 702-03 (Court, in concluding that police officers who had responded to an emergency domestic abuse call were not entitled to summary judgment on an

1   excessive force claim, noted that the nature of the crime at issue, while serious

2   and reprehensible, provided little, if any, basis for the officers' use of physical

3   force given that the suspect was unarmed, he was clad in his pajamas, he was

4   separated from the alleged victim, he did not show any signs of fleeing, and while

5   he had shouted expletives at the officers he did not offer any resistance that was

6   particularly bellicose.)  At the very least, a reasonable jury could conclude from

7   the evidence that there were less forceful means available to Corporal Rankin to

8   accomplish the detention of Mr. Marlowe, such as allowing him to walk upright to

9   the patrol car using the available stepping stones and pavement and allowing him

10  to remain locked in the patrol car without being handcuffed.

11          While the defendants are correct that Mr. Marlowe conceded that he

12  suffered no physical injury from the amount of force used on him, that is

13  insufficient to defeat the excessive force claim because Mr. Marlowe also testified

14  that he was never so upset or terrified as during the incident and that it was the

15  worst thing that ever happened to him outside the death of his son.  *See* Flores v.

16  City of Palacios, 381 F.3d 391, 400-01 (5th Cir.2004) (Court noted that

17  psychological injuries can be sufficient to support a Fourth Amendment excessive

18  force claim.)

19          The Court further concludes that a reasonable officer would have known

20  that the amount of force used on Mr. Marlowe was excessive under the factual

21  scenario presented by the plaintiffs because it was clearly established at the time

22  of this incident that a suspect's verbally abusive and disrespectful attitude

23  towards an officer does not justify the use of unnecessary force.  Winterrowd v.

24  Nelson, 480 F.3d 1181, 1185 (9th Cir.2007) (Court, in denying qualified immunity

25  to police officers who used excessive force on a suspect who was only verbally

26

- 17 -

1    abusive, noted that while police may "resent having obscene words and gestures

2    directed at them, they may not exercise the awesome power at their disposal to

3    punish individuals for conduct that is not merely lawful, but protected by the First

4    Amendment."), quoting Duran v. City of Douglas, Ariz., 904 F.2d 1372, 1378 (9th

5    Cir.1990).

6    B. Alyce Marlowe's Federal Claims Against Corporal Rankin

7          The defendants also seek summary judgment as to any § 1983 claims that

8    Mrs. Marlowe may be asserting against Corporal Rankin.  Notwithstanding that

9    the complaint does not appear to allege any federal constitutional claims on

10   behalf of Mrs. Marlowe, the plaintiffs conclusorily contend in their response that

11   Mrs. Marlowe's constitutional rights were violated because she was deprived of

12   her liberty during Corporal Rankin's detention of her husband in that she "was

13   unable to leave the situation, and had to stand by and witness Corporal Rankin

14   violate her otherwise peaceful home, and take her husband into custody without

15   probable cause."  The plaintiffs do not cite to any evidence or case law supporting

16   their position.

17         The Court concludes under the first prong of Saucier's qualified immunity

18   analysis that Corporal Rankin is entitled to summary judgment as to any § 1983

19   claims raised by Mrs. Marlowe because the undisputed evidence of record

20   establishes that he neither seized her nor used any type of force against her, nor

21   did he in any other way violate her constitutional rights.  As Mrs. Marlowe

22   specifically testified, she did not see any of the abusive behavior that Corporal

23   Rankin allegedly inflicted on Mr. Marlowe - e.g., she testified that she could not

24   see into the back yard because it was dark, she did not see Mr. Marlowe being

25   walked to the patrol car, she did not see him sitting in the patrol car, and she

26

- 18 -

1   does not think she ever saw Corporal Rankin during the incident.  Furthermore,

2   while she testified that she was terrified about what was happening, she never

3   testified that Corporal Rankin ever prevented her from leaving her residence

4   during the incident.

5   C.  The Plaintiffs' Federal Claims Against Pinal County

6        Count Two of the complaint alleges in part that Pinal County

7           as a matter of de facto policy and with deliberate
    indifference, failed to adequately train, supervise,
8           discipline, and/or control their police officer regarding
    proper respect for the Constitutional rights of citizens
9           and the duty to report and restrain violations of citizens'
    Constitutional rights and also failed to establish,
10          supervise and enforce proper written and/or unwritten
    policies regarding proper respect for the Constitutional
11          rights of citizens and the duty to report and restrain
    violations of citizens' Constitutional rights.

12

13  The defendants argue, and the Court concurs, that they are entitled to summary

14  judgment as to whatever federal constitutional claims that the plaintiffs are

15  alleging against Pinal County.

16       Since there is no respondeat superior liability under § 1983, Pinal County is

17  liable for the violation of constitutional rights only if the plaintiffs establish (1) that

18  Corporal Rankin, a county employee, violated the constitutional rights of Mr.

19  Marlowe and/or Mrs. Marlowe, (2) that the county had a policy or custom that

20  amounted to deliberate indifference, and (3) that the county's policy or custom

21  was the moving force behind Corporal Rankin's violation of the plaintiffs'

22  constitutional rights. Long v. County of Los Angeles, 442 F.3d 1178, 1186 (9th

23  Cir.2006).  Generally, a party may demonstrate a county's liability for a

24  constitutional violation in one of three ways: (1) by showing that the constitutional

25  tort was the result of a longstanding practice or custom which constitutes the

26

county's standard operating procedure; (2) by showing that the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) by showing that an official with final policymaking authority delegated that authority to a subordinate or ratified the decision of the subordinate.  Price v. Sery, 513 F.3d 962, 966 (9th Cir.2008).  The Court concludes that the plaintiffs have not made the requisite showing under any of these theories.

The plaintiffs conclusorily argue in their response that summary judgment is not warranted as to Pinal County because a jury could reasonably find "that the County endorses and supports Corporal Rankin's method of conducting a search and arrest" and that the county had "a custom or *de facto* policy of allowing unconstitutional conduct."[6]  Their contention is that Pinal County hired Corporal Rankin as a deputy sheriff and permitted him to remain a deputy sheriff notwithstanding evidence in his personnel record "of unreasonable and unprofessional acts in past incidents."  These prior incidents, as cited to in the plaintiffs' statement of facts, consist of a 30-day suspension without pay that

---

[6]

While the complaint mentions a failure to adequately train Corporal Rankin as a ground for Pinal County's § 1983 liability, there is absolutely no mention in the plaintiffs' statement of facts or in their response that the Pinal County Sheriff's Department's training program was in anyway inadequate, much less the submission of any evidence establishing any training deficiencies or that training deficiencies caused the alleged constitutional violations.  *See* Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir.1989) (Court noted that in order to defeat summary judgment on a claim of municipal liability based on inadequate training, the plaintiff must produce evidence from which a reasonable jury could find (1) the existence of an inadequate training program, (2) deliberate indifference on the municipality in adequately training its police officers, and (3) that the inadequate training actually caused a deprivation of the plaintiff's constitutional rights.)

Corporal Rankin received in September, 2004 while employed as a deputy sheriff for an off-duty incident wherein he failed to stop a friend from assaulting someone in his presence and then failed to timely report the assault, a letter of formal reprimand that Corporal Rankin received in March, 1999 for an unspecified off-duty incident during his previous employment as a county detention officer, and a comment in the background investigation section of his personnel file from his previous employment as a Pinal County detention officer wherein he was described by his supervisor as having been disciplined for using excessive force against an inmate.

While a county may be held liable under § 1983 if its failure to fire or reprimand officers committing constitutional torts evidences a policy of deliberate indifference to their misconduct, *see* Henry v. County of Shasta, 132 F.3d 512, 520 (9th Cir.1997), *as amended*, 137 F.3d 1372 (9th Cir.), *cert. denied*, 525 U.S. 819 (1998), the plaintiffs do not cite to any evidence showing that Pinal County failed to properly discipline Corporal Rankin for past misconduct - in fact, the evidence submitted by the plaintiffs shows that Pinal County formally, and significantly, disciplined Corporal Rankin for his one incident of off-duty misconduct while employed as a deputy sheriff, and that it disciplined him for the two cited-to instances of misconduct while previously employed as a detention officer.

Furthermore, even if Pinal County had some policy of not sanctioning police misconduct, the plaintiffs do not cite to any evidence of record showing that there was a causal link behind such a policy and Corporal Rankin's acts, *i.e.* evidence establishing that their constitutional injuries could have been avoided had Pinal County implemented a proper disciplinary policy. Long, 442 F.3d at

1190.  Even the plaintiffs' expert, Alan Baxter, does not opine in his affidavit that some Pinal County policy or custom was the moving force behind Corporal Rankin's misconduct.

State Law Claims

While it is not totally clear from the complaint, the parties agree that Counts One and Three allege state law claims for false arrest/detention, assault and battery, negligence, negligent training and supervision, and negligent and/or intentional infliction of mental distress.[7]   The defendants seek summary judgment as to all of them.

A.  False Arrest/False Imprisonment

The defendants, correctly noting that unlawful detention is an essential element of an action for either false arrest or false imprisonment, Slade v. City of Phoenix, 541 P.2d 550, 552 (Ariz.1975), argue that they are entitled to summary judgment on the false arrest/false imprisonment claim because the totality of circumstances establish as a matter of law that Mr. Marlowe was lawfully detained.  The Court concludes otherwise since the defendants do not argue that Corporal Rankin had probable cause to arrest Mr. Marlowe and the plaintiffs have

---

[7]      The Court notes that the record nowhere reflects that the plaintiffs filed timely and proper notices of their state law claims with Corporal Rankin and Pinal County as required by A.R.S. § 12-821.01.  But since the defendants have not raised the issue, the Court will presume that the required notices were filed, or if they were not filed, that the defendants have waived any right to rely on the statute. *See*  Pritchard v. State, 788 P.2d 1178, 1181 and 1183 (Ariz.1990) (Court concluded that since the notice of claim statute is procedural rather than jurisdictional, it is subject to waiver by a defendant); Jones v. Cochise County, 187 P.3d 97 (Ariz.App.2008) (Court noted that a waiver of the notice of claim statute occurs when the defendant either fails to raise non-compliance with the statute as an affirmative defense or acts inconsistently with an intent to assert the defense by litigating the merits of the action.)

1  raised a triable issue of fact as to whether Corporal Rankin detained Mr. Marlowe

2  for longer than it reasonably took him to determine that Mr. Marlowe was not the

3  suspect in the 911 call.

4  B. Assault and Battery

5      The defendants argue that they are entitled to summary judgment on the

6  assault and battery claim as a matter of law because Corporal Rankin's use of

7  force against Mr. Marlowe was legally justified pursuant to A.R.S. § 13-413[8] and

8  A.R.S. § 13-409[9].  The Court cannot agree because the plaintiffs have submitted

9  evidence sufficient to create triable issues of fact as to all three elements of § 13-

10  409.  The plaintiffs have presented evidence from which a reasonable jury could

11  conclude (1) that the amount of force that Corporal Rankin used on Mr. Marlowe,

12  at least after he was handcuffed, was not reasonably necessary in order to effect

13  Mr. Marlowe's detention, (2) that Corporal Rankin never informed Mr. Marlowe

14  why he was being detained and that Mr. Marlowe did not know why he was being

---

[8]
    A.R.S. § 13-413 provides that "[n]o person in this state shall be subject to civil liability for engaging in conduct otherwise justified pursuant to the provisions of this chapter."

[9]
    A.R.S. § 13-409 provides in relevant part that

[a] person is justified in ... using physical force against another if in making ... an arrest or detention ..., such person uses ... physical force and all of the following exist:
1.  A reasonable person would believe that such force is immediately necessary to effect the arrest or detention[.]
2.  Such person makes known the purpose of the arrest or detention or believes that it is otherwise known or cannot reasonably be made known to the person arrested or detained.
3.  A reasonable person would believe the arrest or detention to be lawful.

detained, and (3) that Corporal Rankin could not have reasonably believed that it was lawful to keep Mr. Marlowe detained for a significant period of time after he was informed that the person he had in custody was not the 911 suspect.

C. Negligence

The defendants also seek summary judgment as to any negligence claim being alleged by the plaintiffs.  While it is not entirely clear from the complaint what their negligence claim is, the plaintiffs' response clarifies that they are alleging that Corporal Rankin was negligent in the manner in which he approached their home and arrested Mr. Marlowe.  In support of their argument, the plaintiffs have submitted an affidavit from their expert, Alan Baxter, who conclusorily opines that Corporal Rankin negligently deviated from the applicable standard of a reasonable and trained Arizona peace officer by failing to follow the orders of his dispatcher, by failing to reasonably know his area of patrol responsibility, by failing to confirm the street address to which he was dispatched even though he was unsure of his location, by failing to properly utilize the information provided to him by Mr. Marlowe in order to correctly identify the subject of the dispatch call, and by seizing Mr. Marlowe without probable cause to arrest him.

The Court concludes as matter of law that the defendants are entitled to summary judgment to the extent that the plaintiffs are alleging a claim for simple negligence against Corporal Rankin separate from their false arrest/false imprisonment claim.  The Court concurs with the defendants that the Arizona courts do not recognize a claim of negligent detention or arrest since such claims are intentional torts, which is an issue that the plaintiffs essentially ignore in their response notwithstanding that the defendants raised it in their motion. *See*

Landeros v. City of Tucson, 831 P.2d 850, 851 (Ariz.App.1992) (Court concluded that the public interest mandates the rejection of tort liability for police officers who are simply negligent in their investigation of a crime which results in an arrest.)

While the Court accepts that Arizona law apparently recognizes a cause of action for a grossly negligent police investigation that results in an arrest, *id.*, citing to Cullison v. City of Peoria, 584 P.2d 1156 (Ariz.1978); *accord*, Kerns v. United States, 2007 WL 552227, at *11 (D.Ariz. Feb. 21, 2007), the Court concludes that the plaintiffs' complaint does not allege such a claim, and even if it did, that the defendants are also entitled to summary judgment as to it because the plaintiffs have not submitted any significant probative evidence establishing such a claim.  Under Arizona law, gross negligence differs from simple negligence in quality, not degree, in that it is "highly potent, and when it is present it fairly proclaims itself in no uncertain terms.  It is in the air, so to speak.  It is flagrant and evinces a lawless and destructive spirit." Cullison, at 1160 (internal quotation marks omitted.)  While Corporal Rankin's conduct may well have been negligent, the evidence of record, viewed in the plaintiffs' favor, is insufficient as a matter of law to permit a reasonable jury to conclude that his conduct amounted to such a flagrant violation as to constitute gross negligence.

D. Negligent Training and Supervision

The defendants argue, and the Court concurs, that they are entitled to summary judgment on the plaintiffs' claim that Corporal Rankin was negligently trained and supervised.  Notwithstanding the plaintiffs' conclusory argument to the contrary, which is not supported by citation to any evidence or case law, there is no significant probative evidence that the Pinal County Sheriff's Department

either failed to properly train Corporal Rankin or failed to properly supervise him, or, even if they did so, that the lack of any such improper training or discipline proximately caused any injury to the plaintiffs.

E. Infliction of Emotional Distress

The defendants further argue, and the Court concurs, that they are entitled to summary judgment on Mrs. Marlowe's claim that Corporal Rankin either negligently or intentionally inflicted emotional distress upon her.

In order to establish a claim for negligent infliction of emotional distress stemming from Mr. Marlowe's detention, the plaintiffs must show in part that Mrs. Marlowe suffered actual physical injury resulting from the shock of witnessing injury to her husband. Keck v. Johnson, 593 P.2d 668, 670 (Ariz.1979) ("In order for there to be recovery for the tort of negligent infliction of emotional distress, the shock or mental anguish of the plaintiff must be manifested as a physical injury. Damages for emotional disturbance alone are too speculative.") (Footnote omitted); *accord*, Rowland v. Union Hills Country Club, 757 P.2d 105, 108 (Ariz.App.1988).  The Court concludes that the defendants are entitled to summary judgment on this claim as a matter of law because the undisputed evidence of record, as established by Mrs. Marlowe's testimony, is that she did not suffer any physical injury from the incident.

In order to establish a claim for intentional emotional distress, the plaintiffs must show in part that Corporal Rankin's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  Ford v. Revlon, Inc., 734 P.2d 580, 585 (Ariz.1987).  It is the Court's duty in the first instance to determine whether the acts complained of can be

considered so extreme and outrageous as to state a claim for relief. <u>Rondelli v.</u>
<u>County of Pima</u>, 586 P.2d 1295, 1302 (Ariz.App.1978).  The Court concludes that
the defendants are entitled to summary judgment as to this claim because the
evidence of record, viewed in the light most favorable to the plaintiffs, is
insufficient as a matter of law to establish that Corporal Rankin's conduct towards
Mrs. Marlowe, which the plaintiffs argue consisted of him inflicting fear in her by
his failure to communicate to her the reason for him being there, was so extreme
and outrageous as to go beyond all possible bounds of decency.[10]   Therefore,

IT IS ORDERED that defendants Pinal County and Corporal Hunter L.
Rankin's Motion for Summary Judgment (doc. #50) is granted in part and denied
in part.  The motion is granted as to Dennis Marlowe's federal due process claim,
as to all federal claims against Pinal County, and as to all of Alyce Marlowe's
federal claims, and as to the plaintiffs' state law claims for negligence, negligent
training and supervision, and negligent and/or intentional infliction of emotional
distress; the motion is denied as to Dennis Marlowe's federal claims for wrongful
detention and excessive force, and as to his state law claims for false arrest/false

---

[10]

To the extent that the plaintiffs are also alleging that Corporal Rankin
intentionally inflicted emotional distress on Mr. Marlowe, which is not clear from
either the complaint or the plaintiffs' response to the summary judgment motion,
the Court further concludes that the defendants are entitled to summary judgment
because Corporal Rankin's conduct towards Mr. Marlowe was not sufficiently
extreme and outrageous. *See* <u>Rondelli v. County of Pima</u>, 586 P.2d at 1302
(Court, in affirming summary judgment to the arresting officers on an intentional
infliction of emotional distress claim, determined that allegations that the plaintiff
"was stereotyped as a 'Mafioso', detained with his family for an hour without
explanation, searched and handcuffed outside of his car in full view of motorists
on a street frequently used by his neighbors and friends, treated as a dangerous
criminal for the crime of failing to file a tax return, and falsely arrested" did not
meet the criteria of extreme and outrageous conduct.)

- 27 -

imprisonment and assault and battery.

IT IS FURTHER ORDERED that the parties shall file their Joint Pretrial Statement and any motions in limine no later than **October 3, 2008**.[11]

IT IS FURTHER ORDERED that the Pretrial Conference shall be held on **Tuesday, October 27, 2008, at 3:00 p.m.** in Courtroom 601.[12]

IT IS FURTHER ORDERED that the parties' trial briefs and their proposed jury instructions and voir dire questions shall be filed no later than **November 5, 2008**.[13]

IT IS FURTHER ORDERED that the jury trial of this action shall commence on **Tuesday, November 18, 2008, at 9:00 a.m.** in Courtroom 601.

DATED this 12th day of September, 2008.

Paul G. Rosenblatt
United States District Judge

---

[11] The parties shall review paragraphs 5 and 6 of the Scheduling Order (doc. #18).

[12] The parties shall review paragraph 7 of the Scheduling Order (doc. #18).

[13] The trial brief shall raise all significant disputed issues of law and fact, including foreseeable procedural and evidentiary issues, and shall set forth the party's positions thereon with supporting arguments and authorities.

A form with instructions regarding the marking, listing and custody of exhibits, and a form with instructions regarding the submission of jury instructions, shall be given to counsel at the Pretrial Conference.